*358 Daniel J.,
Dissentiente. David Myers and others, petithe court of equity for Buncombe county, (under the act of 1812,) to decree a sale of a tract of land for partition, wjjich petitioners alleged that they were seized in fee, as tenants in common. The court made the interlocutory decree, that the master sell the said lands on a credit, &c. and report. The sale was made, and the master reported, that Phillip Brittain was the purchaser at the price of $ 5,656, and that he had given bonds and surety to pay the said purchase money by instalments; and the report was confirmed by the court. Brittain paid into the masters office toward the first instalment $> 1,250. And before the other instalments became due, he sold his equitable interest in the said lands, to the plain tiff Smith, for $ 3,800, in the terms mentioned in the transfer written on the back of the certificate of purchase, given to him by the clerk and master. The money, received from Smith by Brittain, was paid into the office for the benefit of Myers and others, and Brittain then paid the balance and took up all the bonds, which he had given to the master, to secure the purchase money. Smith then petitioned the court, with the approbation of Brittain, that the conveyance of the legal title in the land should be made to him; which the court ordered to be done accordingly. And before the legal title was conveyed to Smith by the master, it was discovered that the petitioners Myers and others, were never seized in fee of the lauds, as they had alleged in their partition; but that they had only a life estate in the said lands. Instead of moving the court for a reference to the master, to report upon the title, and see what title Myers and others could make to the said lands, (the most correct course, Atkinson on Titles, 26,) Smith filed this original bill against the petitioners Myers and others, and Brittain, to have a decree, that the contract, which Brittain had made with the master, as the agent of Myers and others, the petitioners, should be rescinded, and that the entire deposit of the purchase money in the masters office should be paid out to him. We are of opinion, that the said contract should be rescinded, as it is evident, from the last will of Da *359 vid Myers, Sr. under whom the petitioners claimed title to the said lands, that they were not seized in fee of the same, nor could they make a good title in fee to the purchaser of the said lands. The money in the office had there been deposited by Brittain, for the benefit of Myers and others the petitioners, when they made a good title to the lands. The parties are now all before the court; and it is asked of the court by Smith, that he may be permitted to take out all the purchase money deposited in the office by Brittain. In Wood v. Griffith, I Swanst. 55, Lord Eldon said, that it was clear, that an equitable interest, under a contract of purchase of land, may be the subject of sale; that the original purchaser is then a trustee for the sub-purchasers, and equity will compel him to permit them to use his name in all proceedings for obtaining the benefit of their contract. This is the law, where the contract is to be completed, and not where it is to be rescinded. But in the case now before us, had Brittain completed his purchase by taking a legal conveyance from the master, and he had afterwards conveyed to S mith by deed of bargain and sale in fee, with covenants in it that he was seized in fee, and also with a further covenant for general warranty, and it had afterwards turned out that Brittain was not seized in fee, or that Smith had been evicted by title paramount, the damages the law would have permitted him, Smith, to recover, upon either of those two covenants, would only be the amount of the purchase money he had paid for the land ; this is the well settled law of this State. How, then, can Smith claim more than his purchase money, after the contract shall be rescinded? Can he be permitted, by auy principle of equity, to ask the court for more of the deposit, than he is out of pocket? Can he pray to have the contract between Brittain and the master rescinded, so as to defeat Myers and others, of the whole of the purchase money paid into the office by Brittain for their benefit, and at the same time pray that he should be allowed to take out of the office all the money Brittain paid in, on his own account. And we ask, where is this equity, to induce the court to make such a de» *360 He has never advanced one cent to Brittain, to raise an equity in his favor, beyond the sum he paid to Brittain, to wit, $3,800. And there is not a single case to sustain t0 pe founc| jn a][ the books, so far as my researches have extended. If Brittain had devised to Smith his equitable contract in these lands, and then he had died, as the vendors of Brittain, for defect of title, could not have forced him, Brittain, in his life tímelo a specific performance; Smith, the devisee, could not have taken a cent of the money deposited in the office by the purchaser; for it would, in law, have belonged to the executor of Brittain. Nor could such a devisee or heir of Brittain have compelled the executor of the purchaser devisor, either to purchase another estate for him, equal in value to the one supposed to have been devised or descended, nor could the devisee or heir even compel the executor of Brittain to pay, out of the personal estate, the price of the defective estate, which had been devised to him, or descended to him. Buckmaster v. Hanop, 7 Ves. 341. Atkinson on Titles, 34. Brome v. Monk, 10 Ves. 597. 1 Powell on Dev. 160, (note by Jar.) When a contract to purchase lands is rescinded, in consequence of a defect of title in the vendor, the general rule is, that the vendor resumes his land, and the purchaser the purchase money, which has been deposited. It is said that the contract, which Smith made with Brittain, is not intended to be rescinded. But it must be recollected, that it is an executory contract, which cannot be enforced without the aid of the court of equity; and that the court never aids a voluntary assignee of such a contract, which Smith is, without the consent of the assignor. Before Smith could call on the court to make an order, that the $5,656, which had been deposited by Brittain in the office, should be paid to him, he should shew the court a better consideration for it, than the bare payment to Brittain of $3,800, for his equitable interest in the contract of purchase of the said latid. All the money in office belonged to Brittain, on the rescinding of the contract with Myers, except that to which Smith was a bona fide assignee for value. And what was that? Answer: 3,800. *361 The residue was in the office to the use of Brittain, and the court ought not to decree it out to Smith, who is, as to it, ]y an assignee of Brittain, without any consideration. Smith cannot get the money, without the decree of this court: and he has repudiated the contract, made by Myers with Brittain, relative to the land, and admits that the money in the office, on the setting aside of the aforesaid contract, would belong to Brittain, were it not for thesub-contracr made with him; but he insists, that by force of that sub-contract, he is the purchaser from Brittain of the said $5,656 m specie, now lying in the masters office, for the sum of $3,800, in specie, paid by him to Brittain. He cannot get this large sum out of the office, unless the court will become active, and decree it to him, against the consent of Brittain ; and he, therefore, prays the court to decree the specific execution of this most usurious contract. To induce a court of equity to decree the specific performance of any assignment, it must be supported by a valuable, or a meritorious consideration. Newland on Con. 65. Smith, over and above the $3,800, has given to Brittain neither of such considerations, for the $5,656. And we know, that an agreement, purely voluntary, will not be executed in a court of equity. Newland on Con. 79. All that Smith can, in conscience, ask of this court, is to be placed in statu quo ante.
Per Curiam, Decree for the plaintiff.